UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ROBERT ALEXANDER DUBOSE, | ) | |
| Institutional ID No. 1426488, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:12-CV-193-BG |
| GILBERT GOMEZ, CO II, | ) | ECF |
| Smith Unit TDCJ, Individual Capacity, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**A.    Procedural History**

Plaintiff Robert Alexander Dubose paid the filing fee and brought this action pursuant to 42 U.S.C. § 1983 claiming that Defendants violated his constitutional rights during his incarceration by Texas Department of Criminal Justice (TDCJ).  The United States District Court transferred the case to the United States Magistrate Judge for further proceedings.  The order of transfer directed that the undersigned conduct preliminary screening and transfer the case back to the docket of the United States District Court if either Dubose or a Defendant did not consent to proceed before the magistrate judge.  Dubose filed a notice of non-consent.

The undersigned thereafter conducted preliminary screening as required by 28 U.S.C. § 1915A and held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). After reviewing Dubose's Complaint, his hearing testimony, and authenticated records, video recordings, and photographs from TDCJ, the undersigned recommends that the district court find that Dubose has stated a claim sufficient to survive preliminary screening.

**B.     Dubose's Claims and Authenticated Records**

Dubose's claims concern a cell extraction and use of force that occurred at the Preston E. Smith Unit. He names as Defendants Officers Gilbert Gomez, Roberto Tarin, Oliver Vasquez, NFN Alonzo, and NFN Berterson, officers involved in the cell extraction. Dubose claims Tarin sprayed chemical agents into his cell; Gomez used excessive force against him at a time when he was subdued from chemical agents and restrained in handcuffs and shackles; Berterson, the cameraman, failed to film the incident in its entirety in order to protect Gomez; and Tarin, Vasquez, and Alonzo did not intervene to stop the assault.

Based on investigation records and footage from a video recording TDCJ provided, an eight-man team was assembled on September 27, 2011, to deal with a situation in Dubose's cell: officers reported that Dubose claimed he had a weapon and would not relinquish control of the food port on his cell door.

The footage from the video recording shows one officer from the extraction team with a shield in front of Dubose's cell door asking him to turn and place his hands in the food port for handcuffing. Dubose does not comply immediately. Eventually, after chemical agents are sprayed into his cell, he turns and places his hands through the food port. Officer Gomez places handcuffs on Dubose's wrists, and he and another officer lift Dubose to his feet. The officers guide Dubose out of the cell to the wall at the left of the cell where they stand on either side of him. Two other officers extract Dubose's cell mate from the cell and move him to the right of the cell. Gomez and the other officer then turn Dubose away from the wall, and another officer takes a still photograph of him. Gomez and the other officer turn Dubose back toward the wall, and the three men remain facing the wall.

After standing at the wall for several minutes, Dubose turns his head to the right and appears to speak to the officer on his right. Officer Gomez says something, Dubose turns his head to the left toward Gomez, and Gomez shoves Dubose into the wall. The officers hold Dubose against the wall for a moment and Gomez then places his right hand on Dubose's neck and throws him to the floor. Gomez, the officer who was standing at Gomez's right side, and a third officer struggle atop Dubose for several minutes. After several minutes the officers guide Dubose to his feet.

Testimony from Dubose is consistent with the footage from the video recording. Dubose testified that he looked to his right to see what an officer was throwing from his cell; Gomez told him to turn toward the wall; and he turned toward Gomez after recognizing his voice and said, "Gomez." According to Dubose, Gomez immediately slammed his head against the wall and then pushed him to the floor where he punched him and pressed his fingers into Dubose's right eye.

Dubose claims he lost a tooth during the incident and suffered a cut to his chin that he believes should have been stitched and that did not heal for several months. He has also alleged that he sustained a busted lip, an abrasion to his left shoulder, and an injury to his right eye. Dubose claims that Gomez pressed his right eyeball deep into his eye socket, resulting in a blood clot that has since healed. In addition, he claims that he has experienced continuing problems with his vision and twitching in his eye.

The authenticated records include photographs showing blood on the end of Dubose's right eyebrow and at the inner corner of his right eye, blood smeared on his upper lip and chin, and an abrasion on his left shoulder.

**C.    Discussion**

The United States Supreme Court has held that the core judicial inquiry in an Eighth Amendment claim of a use of excessive force is whether the force was applied in a good-faith effort

to maintain or restore discipline or maliciously and sadistically to cause harm.  *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d (1992) (citation omitted).  A use of force that is "clearly excessive to the need" and "objectively unreasonable" constitutes "an unnecessary and wanton infliction of pain" that violates the Eighth Amendment.  *Williams v. Luna*, 909 F.2d 121, 124 (5th Cir. 1990).

In this case, Dubose alleges that he was assaulted at a time when he was subdued and compliant and suffered more than *de minimis* injuries as a result of the assault.  In addition, an investigating officer determined that Dubose's actions "did not warrant the response [from Gomez]."  For these reasons, Dubose's allegations against Gomez survive preliminary screening.  *Hudson*, 503 U.S. at 6; *Williams*, 909 F.2d at 124.

Dubose's claims against the remaining Defendants should be dismissed.  Dubose alleged in his Complaint that Tarin sprayed chemicals into his cell.  However, at the *Spears* hearing he testified that he knew chemical agents would be sprayed into his cell if he refused to remove his hand from the food port.  In addition, footage on the video recording shows that Dubose refused to comply with orders to remove his hand from the food port and did not obey orders to do so until after chemical agents were sprayed into his cell.  A prison official who uses chemical agents to subdue a recalcitrant prisoner does not violate the Constitution.  *Clemmons v. Greggs,* 509 F.2d 1338, 1340 (5th Cir. 1975); *see also Baldwin v. Stalder*, 137 F.3d 836, 841 (5th Cir. 1998) (implicitly holding that use of mace was a good faith effort to maintain or restore discipline).  Dubose's claim regarding Tarin's use of chemical agents does not state a constitutional claim and should be dismissed.

Dubose's claim against Berterson should likewise be dismissed.  Based on the video footage from TDCJ, Dubose's claim that Berterson failed to record the incident in its entirety is factually frivolous.  Finally, Dubose's remaining claims that Tarin, Vasquez, and Alonzo did not intervene

to stop Gomez's assault should be dismissed. Dubose has not alleged that any of these Defendants were personally involved in the alleged use of excessive force. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983) (quoting *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976)). This is so even if the court were to assume that Tarin, Vasquez, and Alonzo held supervisory positions. Supervisory liability requires more than mere presence at the scene where a subordinate allegedly violated the plaintiff's constitutional rights; the plaintiff must allege "overt personal participation" or a causal connection between a failure to supervise and train and the alleged violation. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (internal quotation and citation omitted). Dubose has not raised such allegations.

**D.     Recommendation**

The undersigned recommends that the district court find that Dubose's claim against Gomez survives preliminary screening.

The undersigned further recommends that the district court dismiss Dubose's claims against Defendants Tarin, Vasquez, Alonzo, and Berterson pursuant to 28 U.S.C. §1915A(b).

The undersigned has disposed of all non-dispositive issues. In the absence of consent by Dubose, this action must be transferred to the district court.

**E.     Right to Object**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. A party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination

is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    Dated:    December 21, 2012.

_____
NANCY M. KOENIG
United States Magistrate Judge